James H. Power
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd St.
New York, NY 10019
Telephone: (212) 513-3200
Telefax: (212) 385-9010
james.power@hkla w.com

ATTORNEYS FOR PLAINTIFF
HANJIN SHIPPING CO LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE ABRAMS

HANJIN SHIPPING CO LTD.,

Plaintiff,

-against-

PRACTICA SHIPPING CORPORATION a/k/a PRACTICA SHIPPING CORP. LIMITED a/k/a PRACTICA SHIPPING OF CYPRUS LLC.

Defendant.

13 CV 4682

Civil Action No. 13-CV_____

**MEMORANDUM OF LAW IN SUPPORT OF ATTACHMENT**

Plaintiff, Hanjin Shipping Co Ltd. (Seoul) ("Hanjin" or "Plaintiff") hereby moves the Court for an order directing the issuance of process of attachment and garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime claims ("Rule B") against Defendant Practica Shipping Corporation a/k/a Practica Shipping Cor. Limited a/k/a Practica Shipping of Cyprus ("Practica" or "Defendant") on the grounds set forth below:

The Plaintiff, by and through its attorneys, filed a Verified Complaint for attachment in the above-styled case in the Southern District of New York on July 8, 2013.

By this action, Hanjin seeks a writ of maritime attachment of Defendant's bank account funds, debts and credits maintained at U.S. Correspondent Banks located in New York. Plaintiff's Attachment is sought to obtain security for a $2,006,782.50 cargo damage claim pursuant to a Charterparty agreement.

## STATEMENT OF FACTS

As set forth in the Verified Complaint, this Rule B attachment arises out of a dispute between non-party Marubeni Corporation ("Marubeni"), Hanjin ("Owners") and Practica ("Charterers") under a head charterparty and subcharter relating to the M/V HANJIN TACOMA (the "Vessel"). Compl. ¶ 5. During a voyage from a Brazilian load port to the South Korean discharge port the cargo carried onboard the Vessel was damaged. *Id.* ¶¶ 6-7. This cargo included soya beans in bulk. *Id.* ¶ 6. Owners' claims against the Charterers arise out of the voyage and in relation to the damaged cargo including, but not limited to any liability arising under or in relation to the charterparty and/or the Inter Club Agreement incorporated therein.

Cargo claims were asserted by cargo interests and subsequently settled and thus form the basis of Hanjin's claims against Practica and the quantum of the security sought herein in the amount of $2,006,782.50. *Id.* ¶¶ 10-12.

## RULE B ATTACHMENT

### PLAINTIFF IS ENTITLED TO AN ORDER DIRECTING THE ISSUANCE OF A WRIT OF MARITIME ATTACHMENT BECAUSE IT HAS SHOWN THAT IT HAS A MARITIME CLAIM AND THAT DEFENDANTS CANNOT BE FOUND IN THE DISTRICT

Maritime attachments arose because it is often more difficult to obtain jurisdiction over

parties to a maritime dispute than parties to a traditional civil action. Maritime parties are itinerant, their assets transitory. *STX PanOcean (UK) Co. Ltd. v. Glory Wealth Shipping Pte. Ltd.*, 560 F.3d 127, 130 (2d Cir. 2006) (citing *In re Louisville Underwriters*, 134 U.S. 488, 493 (1890). The traditional policy underlying maritime attachment has been to permit the attachment of assets wherever they can be found, thereby obviating the need for a plaintiff to "scour the globe" to find a proper forum for suit, or property of the defendant sufficient to satisfy a judgment. *Id.* (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 443 (2d Cir. 2006).

A plaintiff's right to obtain maritime attachment of a defendant's property to secure its claim is venerable. As stated by the Second Circuit,

> The use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty . . . has prevailed during a period extending as far back as the authentic history of those tribunals can be traced.

*Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47-48 (2d Cir. 1996) (quoting *Atkins v. The Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 303 (1873)). "The rationale underlying maritime attachment is twofold. First, attachment provides a means to assure satisfaction if a suit is successful"; the second purpose is "to insure a defendant's appearance in an action, an aspect of attachment inextricably linked to a plaintiff's substantive right to recover." *Id.* at 48.

Accordingly, maritime attachment is available whenever "the plaintiff has an *in personam* claim against the defendant which is cognizable in admiralty . . . . In other words, the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333." Jarvis, *An Introduction to Maritime Attachment Practice Under Rule B*, 20 J. MAR. L.& COMM. 512, 526 & n.20 (1989). The only other prerequisite necessary for a plaintiff

to demonstrate its entitlement to a writ of maritime attachment and garnishment is to show that "the defendant cannot be found within the district." FED. R. CIV. P. SUPP. R. B(1)(b). Hence, where a plaintiff files a maritime claim and an affidavit showing that the defendant cannot be found within the district, that plaintiff has satisfied the prerequisites for obtaining an order directing the issuance of a writ of maritime attachment and garnishment and the court should issue the requested order without further inquiry:

> Although a plaintiff seeking attachment must supply, along with its verified complaint, an affidavit stating that defendant cannot be found within the district, ***little else is required and there need only be a hearing after the attachment is served.***

*ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426, 434 (2d Cir. 2000) (emphasis added); *see also* Fed. R. Civ. P. Supp. R. B, *Advisory Committee Notes*, 1985 Amendment (stating that Rule B(1) "envisions that the order [directing issuance of a writ] will issue when the plaintiff makes a *prima facie* showing that he has a maritime claim against the defendant in the amount sued for and the defendant is not present in the district.[1] A simple order with conclusory findings is contemplated."). Here, Plaintiff has satisfied the prerequisites for obtaining an order directing the issuance of a writ of maritime attachment and garnishment.

First, Plaintiff's claim is a maritime contract claim based on a charter party and is subject to admiralty jurisdiction. *Morewood v. Enequist,* 64 U.S. 491, 494-95 (1859) ("charter-parties and contracts of affreightment are 'maritime contracts' within the true meaning and construction

---

[1] Rule B(1) provides for attachment or garnishment of goods, credits, and effects of a defendant, provided: 1) there is a maritime cause of action for which an action in personam is available; 2) the defendant cannot be found within the district of the court wherein the cause is commenced. Although as a practical matter a Rule B would not be sought without the belief that property is located or is about to be located within the district, it is not a requirement that the property be so located when the Order is issued. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 455 (2d Cir. 2006), that Plaintiff has the burden of demonstrating that defendant's property "may be found within the district."; *see also DBCN v. Enersur S.A.*, No. 09-8359, 2009 WL 3254447 at *2 (S.D.N.Y. Oct. 9, 2009) (requiring that presence of property in be "plausible").

of the Constitution and act of Congress"). Thus, the first element of the maritime attachment writ inquiry clearly has been satisfied.

Second, Hanjin's search for the Defendants in this District failed to produce any evidence of Defendants' presence in this district. See Power Decl. Thus, the second element of the maritime attachment writ inquiry likewise has been satisfied.

**DEFENDANTS' PROPERTY PRESENT IN THIS DISTRICT IN THE FORM OF FUNDS, CREDITS OR DEBTS IN U.S. CORRESPONDENT BANK ACCOUNTS IS PROPERLY SUBJECT TO RULE B ATTACHMENT**

It is not a novel allegation, but rather a widely accepted premise of international banking that foreign banks maintain their U.S. dollar accounts at correspondent banks located in New York. A correspondent bank account is "an account established for a foreign financial institution to receive deposits from, or make payments to or other disbursements on behalf of, the foreign financial institution, to handle other financial transactions related to such foreign financial institution; and... an account established for a foreign bank to receive deposits from, or to make payments or other disbursements on behalf of, the foreign bank, or to handle other financial transactions related to such foreign bank." 31 C.F.R. § 103.175(d)(1). It is likewise widely accepted that in most instances the funds on deposit at the New York correspondent banks are the funds of the foreign bank's customers.

Correspondent accounts are established because the foreign banks have no branches in the United States. Further, the correspondent accounts are located in New York, where the banks maintain their principal United States offices. In *Cargill Financial Services International, Inc. v. Bank Finance & Credit Ltd.*, 70 A.D.3d 456 (App. Div. 1st Dep't 2010), the Court notes that U.S. dollar correspondent accounts are located in New York. *Id.* at 456. In an affidavit submitted in opposition to the attachment, the Deputy Chairman at the Ukranian bank states that

Correspondent accounts must be maintained in the United States to effect U.S. dollar transactions. Declaration of James H. Power (hereinafter "Power Decl."), Ex. A ¶ 10. In *Cargill* it was established that in most cases the funds within the U.S. dollar Correspondent Accounts of foreign banks are in fact the "funds" of the foreign banks' customers. *Cargill* involved funds of the foreign banks' customers held at Standard Chartered Bank, Citibank, N.A., Deutsche Bank Trust Company Americas, Bank of New York Mellon and HSBC (USA). Exhibit A ¶ 10. The burden rests squarely on the Correspondent Banks to show that the funds maintained by Credit Suisse AG in New York Correspondent Accounts are not the funds of Defendant as demonstrated by *Cargill*.

A bank account constitutes intangible property subject to Rule B. "There is no question that federal admiralty law regards a defendant's bank account as property subject to maritime attachment under Rule B." See, e.g., *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 46 (2d Cir. 1996). A customer maintaining an account at a bank does not own money or funds, but rather the customer is owed a debt by the bank. "It is well established under New York law that the relationship between a bank and its customer for whose account funds have been deposited 'is that of debtor and creditor.'" *Middle East Banking Co. v. State St. Bank Int'l*, 821 F.2d 897, 901 (2d Cir. 1987) (quoting *Solicitor for the Affairs of His Majesty's Treasury v. Bankers Trust Co.*, 304 N.Y. 282, 291 (1952)). Therefore, the situs of the debt as intangible property subject to Rule B is in New York where the account is located. "Rule B also permits a plaintiff to attach intangible items, such as debts owed to the defendant." *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 276 (2d Cir. 2002).

United States banks maintaining correspondent bank accounts on behalf of foreign banks have previously restrained funds pursuant to Order issued out of this Court and discussions are

continuing between Plaintiffs, banks and Defendants in those cases. See, *Sea Lion Marine Ltd. v. Svitzer Ocean Towage B.V.*, No. 13-CV-0211 (S.D.N.Y.), *Toisa Limited v. P.T. Transamudra Usaha Sejahtera*, No. 13-CV-1407 (S.D.N.Y.) and *Lauritzen Bulkers A/S v. JIT International Corporation Limited*, No. 13-CV-3982 (S.D.N.Y.).

## CONCLUSION

Upon review of the Verified Complaint, the Court should conclude that the Plaintiff has shown probable cause for the issuance of the "Process of Attachment and Garnishment" and should direct the Court to issue such process under Rule B.

Dated: New York, New York
July 8, 2013

HOLLAND & KNIGHT LLP

By: ______________________
James H. Power
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3494
Fax: (212) 385-9010
Email: james.power@hklaw.com