UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

HANJIN SHIPPING CO. LTD.,

        *Plaintiff,*

       -  against -

PRACTICA SHIPPING CORPORATION a/k/a
PRACTICA SHIPPING CORP. LIMITED a/k/a
PRACTICA SHIPPING OF CYPRUS LLC,

        *Defendant,*

----------------------------------------------------------X

**13 Civ. 4682 (KBF)**


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRACTICA SHIPPING CORPORATION'S MOTION TO DISMISS

**CHALOS & CO, P.C.**
55 Hamilton Avenue
Oyster Bay, New York 11771
Tel: (516) 714-4300
Fax: (516) 750-9051
E-mail: gmc@chaloslaw.com

*Attorneys for Defendant*
PRACTICA SHIPPING CORPORATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..ii

INTRODUCTION……………………………..……………………………………………1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY…………………………….1

ARGUMENT...................................................................................................................................3

I. PLAINTIFF HAS FAILED TO SATISFY ITS MINIMAL BURDEN FOR
SUSTAINING A RULE B ORDER OF ATTACHMENT ............................................................4

   A.   Background of maritime attachment ...................................................................................4

   B.   Standard for Dismissal of a Rule B Attachment Action........................................................6

   C.   Assets in a Correspondent Account are Not Attachable………………………….………8

   D.   Defendant's Property is Not Found in the District………………………………………12

   E. This Court does not have Jurisdiction over Practica………………………………………16

CONCLUSION…………………………………………………………………...........................17

# TABLE OF AUTHORITIES

**CASES**

*Allied Mar., Inc. v. Descatrade SA*, 2009 U.S. Dist. LEXIS 117383 (S.D.N.Y. 2009)..............9

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434
(2d Cir. 2006)..................................................................................................6

*Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46
(S.D.N.Y. 2009)..........................................................................................*passim*

*Blueye Navigation v. Oltenia Navigation*, 1995 U.S. Dist. LEXIS 1844
(S.D.N.Y. Feb. 15, 1995),,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,*passim*

*Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488 (2d Cir. 2013)................5

*Budisukma Permai SDN BHD v. N.M.K. Prods.*, 606 F. Supp. 2d 391 (S.D.N.Y. 2009).........5-6

*ContiChem LPG v. Parsons Shipping Co., Ltd.*, 229 F.3d 426 (2d Cir. 2000)......................12

*Cosmotrade Exps. v. Conchart Overseas (Ofshore) Sal*, 2009 U.S. Dist. LEXIS 87790
 (S.D.N.Y. Sept. 8, 2009)..........................................................................15-16

*DBCN v. Enersur S.A.*, 2009 U.S. Dist. LEXIS 94410 (S.D.N.Y. Oct. 8, 2009)................13-14

*Del Monte Fresh Produce N.A., Inc. v. M/V Africa Reefer*, 2013 U.S. Dist. LEXIS 37991
(S.D.N.Y. Mar. 19, 2013)..................................................................................7

*First Merch. Bank OSH, Ltd. v. Vill. Roadshow Pictures (U.S.A.) Inc.*, 2002 U.S. Dist.
LEXIS 11769 (S.D.N.Y. June 28, 2002)................................................................11

*Freedom Mortg. Corp. v. Platinum Home Mortg. Corp.*, 2012 U.S. Dist. LEXIS 129244
(N.D.N.Y Sept. 12, 2012)..................................................................................7

*Kyodo Shipping Ltd. Cayman Islands v. Integra Mktg. Pte Ltd.*, 2009 U.S. Dist. LEXIS
44811 (S.D.N.Y. May 27, 2009)..........................................................................14

*Lauritzen Bulkers A/S v. JIT International Corp. Ltd. et. ano.*, 13-cv-3982
(Aug. 9, 2013, Judge Pauley)......................................................................... *passim*

*Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600
(S.D.N.Y. 1997)....................................................................................5, 15

*Marco Polo Shipping Co. Pte. v. Supakit Prods. Co.*, 2009 U.S. Dist. LEXIS 19057
(S.D.N.Y. 2009)................................................................................11, 13, 15

*Nova Mar. B.V.I., Ltd. v. Transvast Shipping Co. Ltd.*, 2009 U.S. Dist. LEXIS 117409
 (S.D.N.Y. 2009)……………………………………………………………………....…9

*Optimum Shipping & Trading S.A. v. Prestige Marine Servs. Pte*, 2010 U.S. Dist.
LEXIS 97410 (S.D.N.Y. Aug. 23, 2010)……………………………………......…14

*ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105 (2d Cir. N.Y. 2009)……....……16

*Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262 (2d Cir. 1985)…………12-13

*Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. N.Y. 1963)……....……16

*Sidwell & Co. v. Kamchatimpex*, 632 N.Y.S.2d 455 (Sup. Ct. 1995)………………………11

*Sigmoil Resources, N.V. v. Pan Ocean Oil Corp.*, 650 N.Y.S.2d 726 (N.Y. App. Div. 1996)….11

*Sinoying Logistics PTE Ltd. v. Yi Da Xin Trading Corp.*, 619 F. 3d 207 (2d Cir 2010)..…….6-7

*The Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte. Ltd.*, 585 F.3d 58
(2d Cir. 2009)……………………………………………………………..……..8, 11, 13

*Thor Rederi A/S v. Revia-Redes Rodoviarias E Ferroviarias De Anfola De Angola,
LDA*, 2009 U.S. Dist. LEXIS 33373 (S.D.N.Y. Apr. 20, 2009)……………………..……….15

*Toisa Limited v. PT Transamudra Usaha Sejahtera*, 13-cv-1407
(Sept. 9, 2013, Judge Furman)……………………………………………..……*passim*

*Tramp Oil & Marine Limited v. Ocean Navigation (Hellas)*, 2004 U.S. Dist LEXIS 7974
(S.D.N.Y. May 7, 2004)……………………………………………………………….6

*Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*,
572 F.3d 96 (2d Cir. N.Y. 2009)……………………………………………..……4, 5, 16

STATUTES/OTHER SOURCES

Fed. R. Civ. P. 12………………………………………………………………...……1, 5, 7

Fed. R. Civ. P. Supp. R. B…..……......………………………………………………*passim*

Fed. R. Civ. P. Supp. R. E…..……….....……………………………………….. *passim*

2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 21-2 (2d ed. 1994)………………6

## INTRODUCTION

**COMES NOW**, Defendant, PRACTICA SHIPPING CORPORATION (hereinafter "Practica" or "Defendant"), by and through undersigned counsel and submits this Memorandum of Law and the accompanying Declaration of Katherine N. Christodoulatos ("KC Decl."), in support of its Motion to Dismiss this matter in its entirety. More than five (5) months ago, Plaintiff Hanjin Shipping Co. Ltd. (hereinafter "Plaintiff" or "Hanjin") improperly obtained an *ex parte* Order of Attachment, issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). Plaintiff has wholly failed to satisfy its threshold burden of demonstrating that Defendant has property in this District, having failed to present even a shred of evidence in support of its position. The reason for this is simple – Practica does <u>not</u> have property in this District. Plaintiff's representations to the contrary are unsubstantiated, and based on nothing more than Plaintiff's wishful yet seriously misguided attempts to conduct a fishing expedition, which this Honorable Court has already recognized as improper (Docket #24). For the reasons set forth below, this matter must be dismissed in its entirety in accordance with Rule 12(b) of the Federal Rules of Civil Procedure, as this Court lacks jurisdiction over Practica.

## FACTUAL AND PROCEDURAL BACKGROUND

This action was commenced on or about July 8, 2013 by Plaintiff, who sought to attach assets belonging to Practica, pursuant to Supplemental Admiralty Rule B. Docket #1. Specifically, Plaintiff sought to attach "Defendant's bank account funds, debts and credits maintained at U.S. Correspondent Banks located in New York." Docket #6. An Order for Issuance of a Writ of Maritime Attachment and Garnishment ("Order of attachment") was issued on July 9, 2013, and permitted attachment of Practica's assets in an amount up to USD 2,006,782.50. Docket #2. This Order of attachment was served on the three (3) garnishees

1

named in Hanjin's Complaint – Bank of New York ("BoNY"), Deutsche Bank Trust Company Americas ("Deutsche Bank"), and Credit Suisse AG ("Credit Suisse"). All three (3) garnishees filed responses with the Court confirming that they were not holding assets of Practica, and requesting that the Order of attachment be vacated as to each garnishee.[1] *See* Dockets # 8 – 11.

Thereafter, in a letter to the Court, Practica requested that the matter be dismissed. *See* KC Decl., ¶ 3, Ex.1. Plaintiff responded, arguing the Credit Suisse's Report (Docket # 9) was deficient, and requesting that the Court wait to consider Practica's request "until an Answer is filed by Credit Suisse AG on August 16, 2013, and until discovery can be conducted…" *See* KC Decl, ¶ 4, Ex.2. In response, Credit Suisse submitted a letter to the Court on August 5, 2013, confirming that it would file an Answer on August 16, 2013, but advising that it had already conducted the requisite search for assets of Practica, and that no further search would be conducted. *See* KC Decl, ¶ 5, Ex.3. Credit Suisse filed its Answer on August 16, 2013, reiterating that it does not have any accounts held for or on behalf of Practica, and that it is not holding any property of Practica in the Southern District of New York or in the U.S. Docket #14.

A conference was held before this Court on August 30, 2013, wherein the parties disputed whether property of Practica could be found in the District, and specifically, whether Practica maintains an attachable interest in credits *purportedly* held in Credit Suisse's correspondent U.S. dollar accounts in New York. Thereafter, the Court directed the parties to submit briefing as to: (i) the correspondent bank issue; and (ii) whether jurisdictional discovery was warranted. Docket #20. Following the submission of letter briefs from each party, the Court issued an Order on September 19, 2013, permitting "*limited jurisdictional discovery* of the

---

[1] BoNY and Deutsche Bank filed Answers with the Court. Credit Suisse's response was captioned "Report of Garnishee Credit Suisse AG to Writ of Attachment and Garnishment."

Financial Institutions," and denying Hanjin's request of Practica "that it provide 'all contracts between Practica and any United States entities'" on the basis that "that is a true fishing expedition." Docket #24 (*emphasis added*).

Hanjin issued subpoenas to Credit Suisse, Deutsche Bank, and BoNY on October 3, October 15, and October 18, 2013, respectively.[2] *See* KC Decl, ¶ 6, Ex. 4. The subpoenas sought, *inter alia*, copies of orders, instructions or wire transfers "received from a payor/transferor bank to a payee/transferee bank for the benefit or credit of: (a) Practica." On October 17, 2013, Credit Suisse responded to the subpoena, indicating that it has *no documents responsive to any of Hanjin's requests*. *See* KC Decl, ¶ 7, Ex. 5. BoNY responded to Plaintiff's initial subpoena on November 13, 2013, and Deutsche Bank has now also provided its response to Plaintiff's subpoena. *See* KC Decl, ¶ 10. On November 25, 2013, Hanjin served a supplemental subpoena on BoNY, seeking copies of orders, instructions or wire transfers (as set forth in its initial subpoena), for the period beginning September 1, 2013 through the date of production. *See* KC Decl, ¶ 8, Ex. 6. On December 10, 2013, Hanjin issued yet another supplemental subpoena to BoNY requesting the same documents and information, for the period beginning November 29, 2013, through the date of production. *See* KC Decl, ¶ 9, Ex.7.

At present, a status conference is scheduled in this matter for January 9, 2014. Docket #38.

## ARGUMENT

It is a threshold requirement of Rule B that the defendant's property be found within the District. Plaintiff has failed to satisfy even this minimal burden; and as such, the Order of attachment must be vacated, and the matter dismissed in its entirety. Plaintiff argues that credits

---

[2] Notably, while this Court issued an Order permitting limited discovery of the financial institutions on September 19, 2013 (Docket # 24), it was not until October 18, 2013 that Hanjin completed service of the subpoenas on the three (3) banks.

Chalos & Co ref: 2094.040

of Practica are located in correspondent accounts within the District, and are attachable. However, following over three (3) months of discovery, Plaintiff has failed to present even a shred of evidence that attachable assets belonging to Practica can be found in the Southern District of New York. Other Courts in the District have unequivocally determined that credits in correspondent accounts in New York are <u>not</u> attachable property under Rule B. *See Lauritzen Bulkers A/S v. JIT International Corp. Ltd. et. ano.*, 13-cv-3982 (Aug. 9, 2013, Judge Pauley), and *Toisa Limited v. PT Transamudra Usaha Sejahtera*, 13-cv-1407 (Sept. 9, 2013, Judge Furman). Accordingly, Plaintiff has failed to meet the requirements necessary to sustain the Order of attachment, and the Order must be vacated and that action dismissed.

## I.  PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN FOR SUSTAINING A RULE B ORDER OF ATTACHMENT.

### A. Background of maritime attachment.

Rule B of the Supplemental Rules of Admiralty and Maritime Claims governs the procedure by which a party may attach another party's assets. Rule B provides, in relevant part:

> If a defendant is not found within the district, … a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process ….the court must review the complaint and affidavit and, if the conditions of this Rule B appear to exists, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

*See* Fed. R. Civ. P. Supp. R. B. Where property has been restrained "pursuant to an order of maritime attachment, Rule E(4)(f) provides a mechanism by which a person claiming an interest in attached property may seek to have the property released." *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572 F.3d 96, 101 (2d Cir. N.Y. 2009). Specifically, Rule E(4)(f) states, in relevant part:

4

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules....

*See* Supplemental Rule E(4)(f).

Where no property has been attached, a defendant may challenge an Order of attachment pursuant to Fed. R. Civ. P. 12(b)(2), on the basis that the Court lacks jurisdiction over the defendant. *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 498, n. 10 (2d Cir. N.Y. 2013). The historical purpose of maritime attachment is "first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572 F.3d 96, 100 (2d Cir. N.Y. 2009). It is through the attachment of a defendant's property in the District that a "maritime or admiralty court gains jurisdiction over the defendant's 'person'". *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 605 (S.D.N.Y. 1997); *see also Blueye Navigation v. Oltenia Navigation*, 1995 U.S. Dist. LEXIS 1844, *10 (S.D.N.Y. Feb. 15, 1995)("Because jurisdiction over the person is *gained only through the attached property*, courts have recognized that Rule B jurisdiction properly is characterized as *quasi in rem*.")(*emphasis added*).

While a motion to dismiss under Fed. R. Civ. P. 12(b)(2) differs from a motion to vacate pursuant to Supplemental Rule E, the grounds for both motions "equally attack the adequacy of the attachment order." *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46, 50 (S.D.N.Y. 2009)("While this Court notes that a motion to vacate an attachment and a motion to dismiss a complaint are not the same, Transult's grounds for making its motion to dismiss under Rules 12(b)(2) and 12(b)(6) equally attack the adequacy of the attachment order.")(*internal citations omitted*); *see also Budisukma Permai SDN BHD v. N.M.K. Prods.*, 606 F. Supp. 2d 391, 398 (S.D.N.Y. 2009)("Adoption of the Alter Ego Defendants' proposed

5

standard of Rule 12(b)(6) would effectively subsume the more lenient prima facie standard articulated by Rule B.")

## B.    Standard for Dismissal of a Rule B Attachment Action.

It is well established that "an order of maritime attachment is available where the plaintiff has an *in personam* claim against the defendant that is cognizable in admiralty, the defendant cannot be found in the district, property of the defendant can be found in the district, and there is no . . . prohibition to the attachment." *Tramp Oil & Marine Limited v. Ocean Navigation (Hellas)*, 2004 U.S. Dist LEXIS 7974 (S.D.N.Y. May 7, 2004) citing 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 21-2, at 470 (2d ed. 1994). In *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006), the Second Circuit Court of Appeals clarified the circumstances under which a Rule B attachment should be vacated. As that Court explained:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E.

*Id.* at 445 (footnotes omitted)(*emphasis added*). *Aqua Stoli* made clear that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." *Id.* at 447. Here, Plaintiff fails to satisfy the third *Aqua Stoli* requirement – *i.e.* that defendant's property may be found within the district. It is axiomatic that "a district court *must vacate* an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rule [] B... Therefore, if, at any point, a plaintiff in a maritime attachment case ceases to be able to satisfy the requirements of Rule B, a district court may--and indeed *should*--revisit and vacate any

6

orders of attachment." *Sinoying Logistics PTE Ltd. v. Yi Da Xin Trading Corp.*, 619 F. 3d 207, 212 (2d Cir 2010)(*internal citations omitted*).

In the Rule B context, plaintiffs must additionally satisfy Rule E(2)'s heightened pleading standard, which requires a complaint to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). The heightened Rule E(2) requirement is "more demanding than Rule 8's pleading standard and is intended to prevent a plaintiff from 'hold[ing], for a substantial period of time, property to which, in reality, it has no legitimate claim.'" *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009).

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996). At the pre-discovery stage, plaintiffs must make a "prima facie showing that personal jurisdiction exists." *Del Monte Fresh Produce N.A., Inc. v. M/V Africa Reefer*, 2013 U.S. Dist. LEXIS 37991, *3 (S.D.N.Y. Mar. 19, 2013). Once jurisdictional discovery is conducted, however, the plaintiff's burden is heightened, with the requirement that the "prima facie showing...include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Freedom Mortg. Corp. v. Platinum Home Mortg. Corp.*, 2012 U.S. Dist. LEXIS 129244, *7 (N.D.N.Y Sept. 12, 2012). The court "does not accept conclusory allegations or draw argumentative inferences." *Del Monte*, 2013 U.S. Dist. LEXIS 37991 at *3.

7

## C.  Assets in a Correspondent Account are Not Attachable.

Plaintiff seeks to attach "property in the form of credits, debts or funds for the ultimate benefit of Defendant in the hands of BNY Mellon and Deutsche Bank and other Correspondent Banks." Docket #1, ¶ 29.   The Second Circuit in *The Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte. Ltd.*, 585 F.3d 58 (2d Cir. 2009), however, expressly held that such assets are <u>not</u> attachable under Rule B. ("Because EFTs [electronic fund transfers] in the temporary possession of an intermediary bank are not property of either the originator or the beneficiary under New York law, they cannot be subject to attachment under Rule B.") *Id.* at 71.

In its Complaint, Hanjin alleges that Practica maintains a U.S. dollar account with Credit Suisse; that Credit Suisse in turn maintains correspondent accounts with Deutsche Bank and BoNY; and that correspondent accounts of foreign banks "are maintained in the United States to effect transactions in U.S. Dollars." Docket #1, ¶ 20-25.   The "assets" Hanjin describes are indistinguishable from EFTs, which the Second Circuit determined are not attachable property. Notably, the Second Circuit in *Jaldhi* described the process by which EFTs are transferred, as follows:

> If the banks are not in the same consortium – as is often true in international transactions – then the banks must use an intermediary bank.   To use an intermediary bank to complete the transfers, the banks must each have an account at the intermediary bank (or at different banks in the same consortium).   After the originator directs its bank to commence an EFT, the originator's bank would instruct the intermediary to begin the transfer of funds.   The intermediary bank would then debit the account of the bank where the originator has an account and credit the account of the bank where the beneficiary has an account.   The originator's bank and the beneficiary's bank would then adjust the accounts of the respective clients.

*See Jaldhi*, 585 F.3d at 61, n1.  The originator or beneficiary of a transaction does <u>not</u> receive a debit or credit directly from the intermediary or correspondent bank – such transfers are received only from the originator or beneficiary's bank. *Id.*   As such, Practica, whose account is located

in Switzerland, would only receive transfers from Credit Suisse in Switzerland, not in New York. Under New York law "the situs of intangible property, such as beneficial interests, is 'the location of the party of whom performance is required by the terms of the contract.'"). *Nova Mar. B.V.I., Ltd. v. Transvast Shipping Co. Ltd.*, 2009 U.S. Dist. LEXIS 117409, *6 (S.D.N.Y. 2009). Thus, even if credits were owed to Practica by Credit Suisse, the location of that property would be in Switzerland, where Practica's bank is located. *See Allied Mar., Inc. v. Descatrade SA*, 2009 U.S. Dist. LEXIS 117383, *7 (S.D.N.Y. 2009)(Court rejected Rule B plaintiff's request that funds in a suspense account be attached, even if this suspense account were located in New York, because the "situs of [the defendant's] beneficial interest is the location of BNP Paribas Paris [bank where defendant maintains an account] — here, France").

Recent decisions of two (2) Judges in this District confirm that the assets Hanjin seeks to attach are not attachable property based on the prevailing case law, namely *Jaldhi*. *See Lauritzen Bulkers A/S v. JIT International Corp. Ltd. et. ano.*, 13-cv-3982 (Aug. 9, 2013, Judge Pauley)("*Lauritzen*"), and *Toisa Limited v. PT Transamudra Usaha Sejahtera*, 13-cv-1407 (Sept. 9, 2013, Judge Furman)("*Toisa*"). The plaintiffs in *Lauritzen* and *Toisa* filed Complaints, asserting nearly identical factual allegations and legal arguments as in this matter, seeking to attach "property, including property in the form of credits, debts or funds for the ultimate benefit of Defendants in the hands of" correspondent banks. *See* KC Decl., ¶ 11, Ex. 8. Judges Pauley and Furman rejected the plaintiff's arguments and vacated the respective attachments.

In *Lauritzen*, the Court initially issued the Order of attachment sought by the plaintiff. See 13-cv-3982, Docket # 2. The garnishee bank, in its Answer, indicated that it restrained assets belonging to the named correspondent bank, upon being served with the Order of attachment, but that it was not holding any assets or property of the defendant. See 13-cv-3982,

Docket # 9. Accordingly, the garnishee requested that the Order of attachment be vacated. *Id.* The parties and garnishee submitted briefing regarding whether the attachment should be vacated, and specifically, whether defendant's funds could be found in the District. See 13-cv-3982, Docket # 12, 17, 26. In vacating the Order of attachment, Judge Pauley reasoned as follows:

> Plaintiff argues that it should be permitted to attach assets from [the foreign bank's] correspondent account with HSBC USA because that account is held for the benefit of [defendant] JIT, International. But that argument sweeps too broadly and is not supported by the record. <u>By Plaintiff's logic, certain accounts can be attached simply because a domestic bank has a relationship with a foreign bank that holds an account for a Defendant. The Second Circuit forbids this kind of overreaching because, among other things, it would threaten "New York's standing as an international financial center." See Jaldhi.</u> 585 F.3d at 71.

*See* KC Decl., ¶ 12, Ex. 9. (*emphasis added*). Judge Pauley correctly determined that the property plaintiff sought to attach (which is identical to the property sought to be attached in this matter) reached far beyond the scope of attachable assets for purposes of Rule B, as defined by the Second Circuit. Further, Judge Pauley took into consideration the garnishee's representation that it was not holding accounts of the defendant, and defendant's assertions that it had no property in the District, and held that "Plaintiff's speculation to the contrary does not satisfy the requirements of Rule B." *See* KC Decl., ¶ 12, Ex. 9.

*Toisa*, in which Judge Furman similarly vacated an Order of attachment, involved nearly identical circumstances. In *Toisa*, plaintiff attached funds in a correspondent account at BoNY belonging to Bank Mandiri, a foreign bank at which the defendant purportedly maintained a U.S. dollar account. *See* KC Decl., ¶ 13, Ex. 10, pg. 36, ln. 20-23. As such, the issue before the court was "whether defendant itself has an attachable property interest in the funds within Bank Mandiri's correspondent account or whether those funds are solely the property of Bank

Mandiri." *See* KC Decl., ¶ 13, Ex. 10, pg. 36, ln. 23 – pg. 37, ln. 1.   The court applied New York

law in evaluating this issue[3], and reasoned, in relevant part, as follows:

> Under New York law, the customers of a foreign bank generally have no property
> interest in a correspondent account that the bank maintains in the United States.
> *See, e.g.,Sigmoil Resources, N.V. v. Pan Ocean Oil Corp.*, 650 N.Y.S.2d 726, 727
> (N.Y. App. Div. 1996). That is, 'neither the originator who initiates a payment'
> through a correspondent account, 'nor the beneficiary who receives it holds title
> to the funds' in the account. *Id.* Instead, the funds belong to the foreign bank in
> whose name the account is held. *See id.* <u>Therefore, under New York law, once a</u>
> <u>foreign financial institution credits its customer for any payments received</u>
> <u>through a correspondent account, the customer has no property interest in the</u>
> <u>funds in that account.</u> *See id.; see also Sidwell & Co. v. Kamchatimpex*, 632
> N.Y.S.2d 455, 460 (Sup. Ct. 1995); *and e.g. First Merch. Bank OSH, Ltd. v. Vill.
> Roadshow Pictures*, 2002 WL 1423063, at *1 n.4 (S.D.N.Y. June 28, 2002).

*See* KC Decl., ¶ 13, Ex. 10, pg. 37, ln. 6 - 21 (*emphasis added*).[4]   Once a customer has been

credited by its foreign bank, that customer has "no interest in the funds in the bank's

correspondent account." *Id.*, pg. 43, ln. 5 – 7.   As such, Practica has <u>no</u> interest in funds held in

Credit Suisse's correspondent accounts in New York.

Judge Furman also emphasized that plaintiff can only attach assets that are held by the

garnishee at the time the Order of attachment is served.   As in this matter, however, the plaintiff

in *Toisa* failed to assert sufficient facts to "render it plausible that the defendant's funds will be

present in the district at some future time." *Marco Polo Shipping Co. Pte. v. Supakit Prods. Co.*,

2009 U.S. Dist. LEXIS 19057, *4 (S.D.N.Y. 2009).   Specifically, Judge Furman concluded that:

> Plaintiff has failed to allege that any particular funds belonging to defendant are
> or will be in any particular correspondent account at any particular time. Indeed,
> there is no allegation or evidence at all that Bank Mandiri has failed to credit
> defendant for any of its transactions or that it will do so in the future, let alone any
> specific allegation of particular funds that have not or will not be credited.
> Plaintiff's allegations here express little more than a speculative hope that

---

[3] *See The Shipping Corp. of India v. Jaldhi Overseas Pte. Ltd.*, 585 F. 3d 58 (2d Cir. 2009)("When there is no federal maritime law to guide our decision, we generally look to state law to determine property rights.")
[4] Notably, Judge Furman expressly stated that "*Jaldhi* is materially indistinguishable from the circumstances present here." *See* KC Decl., ¶ 13, Ex. 10, pg. 43, ln. 8-9.

Chalos & Co ref: 2094.040

defendant's assets will fortuitously appear in one of Bank Mandiri's correspondent accounts. *Id.* Such allegations are insufficient as a matter of law. *See Id.*

*See* KC Decl., ¶ 13, Ex. 10, pg. 44, ln. 13 – 23. Accordingly, the court determined that the plaintiff's allegations were not sufficient to demonstrate that the defendant had property within the district, and the Order of attachment was vacated.[5]

The *Lauritzen* and *Toisa* matters involved the same issue which is now before this Court. Practica respectfully submits that this Court should be guided by the well-reasoned decisions in those matters.

**D.      Defendant's Property is Not Found in the District.**

Plaintiff has not (and cannot) demonstrated that Practica has attachable property located within this District. The allegation that Practica maintains an attachable interest in credits at Credit Suisse's New York correspondent banks is strictly conclusory, and cannot constitute a basis to sustain the Order of attachment. The Order of attachment was issued over five (5) months ago, and limited jurisdictional discovery was permitted by this Court over three (3) months ago. Still, Hanjin has made no showing that Practica has attachable property in this District. Instead, Hanjin continues to fish for documents and information which are well beyond the scope of Rule B. Notably, Hanjin has issued two (2) supplemental subpoenas to BoNY, seeking updated information and documents for the period <u>after</u> September 1, 2013, even though this is almost two (2) months after the date service of the Order of attachment was effected on the garnishees. *See* KC Decl, ¶ 8-9, Ex. 6, 7; *see also ContiChem LPG v. Parsons Shipping Co., Ltd.*, 229 F.3d 426, 434 (2d Cir. 2000)(citing *Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262, 268 (2d Cir. 1985)) ("Rule B(1) relief is not valid where the attachment and

---

[5] While issues relating to foreign sovereign immunity were raised by the garnishee bank, and briefed by the parties, Judge Furman expressly held that these arguments need not be addressed. *See* KC Decl., ¶ 13, Ex. 10, pg. 46, ln. 12 – 15. ("I need not, and do not reach Bank Mandiri's arguments regarding foreign sovereign immunity.")

garnishment is served before the garnishee comes into possession of the property."). Hanjin has clearly abused this Court's permission to conduct "*limited discovery*". This behavior is not appropriate and should not be well-received by this Court.

It is well-settled that the existence of a defendant's property within the District is the "most basic…requirement of Rule B attachment." *Blueye Navigation v. Oltenia Navigation*, 1995 U.S. Dist. LEXIS 1844, *13 (S.D.N.Y. Feb. 15, 1995). Failure to demonstrate this requirement constitutes a valid basis for dismissal of the action. *Id.*; *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46 (S.D.N.Y. 2009). A plaintiff "must at least set forth enough facts to render it plausible that the defendant's funds will be present in the district at some future time." *Marco Polo Shipping Co. Pte. v. Supakit Prods. Co.*, 2009 U.S. Dist. LEXIS 19057, *4 (S.D.N.Y. 2009). Courts in this District have vacated existing Orders of attachment and refused to issue Orders of attachment where a plaintiff has failed to make the requisite showing that defendant's funds are located in the District. In *DBCN v. Enersur S.A.*, 2009 U.S. Dist. LEXIS 94410, *1 (S.D.N.Y. Oct. 8, 2009), the plaintiff alleged "upon information and belief," that the defendant would have electronic funds transfers passing through the District.[6] *Id.* at *2. The court denied a Rule B application on the basis that:

> In the Court's view, more is required to demonstrate a 'plausible' entitlement to a maritime attachment than a conclusory allegation that, on the basis of general industry practices, 'it is anticipated and expected that' Defendants will have property in this District located at any of ten or more garnishees during the pendency of the requested order…Plaintiff's allegations here are void of any such specificity, and on their face appear to be little more than a speculative hope that Defendant's assets, in the form of EFTs, will fortuitously appear at a garnishee bank in this District.

---

[6] Since *DBCN*, the Second Circuit Court of Appeals has held that electronic funds transfers passing through intermediary banks in New York are not attachable under Rule B. *The Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009).

*Id.* at *7; *see also Optimum Shipping & Trading S.A. v. Prestige Marine Servs. Pte*, 2010 U.S. Dist. LEXIS 97410 (S.D.N.Y. Aug. 23, 2010)(Court declined plaintiff's Rule B application because "merely identifying defendant's customers within the District would be insufficient to establish the plausibility of locating defendant's property here."). Plaintiff's Complaint is full of allegations made "upon information and belief" and unsupported assumptions regarding general industry practices. Docket #1. *Kyodo Shipping Ltd. Cayman Islands v. Integra Mktg. Pte Ltd.*, 2009 U.S. Dist. LEXIS 44811, *4 (S.D.N.Y. May 27, 2009)(Court refused to issue an Order of attachment where plaintiff alleged "upon information and belief" that defendant has or will have property within the District, and "Plaintiff offers no elaboration on these allegations, and counsel has not provided any support in its affirmation to substantiate its speculative and conclusory assertions.") Such speculation that credits in a correspondent account may be held for the benefit of Practica is unavailing and wholly insufficient to sustain the Order of attachment.

It is well-established that where no assets have been attached (as in this matter), courts have dismissed Rule B matters based on lack of jurisdiction. *Blueye Navigation v. Oltenia Navigation*, 1995 U.S. Dist. LEXIS 1844, *10 (S.D.N.Y. Feb. 15, 1995) is analogous and instructive. The plaintiff in *Blueye Navigation* obtained an Order of attachment, which was served on numerous banks within the Southern District that plaintiff alleged held assets of the defendants. *Blueye Navigation*, 1995 U.S. Dist. LEXIS 1844, *7 (S.D.N.Y. Feb. 15, 1995). As in this matter, all of the banks served responded that they were not holding any assets of the defendants. *Id.* at *15. The plaintiff attributed its failure to identify property of the defendants to "a lack of proper identification requirements relating to the banks' wire transfer systems", and argued that a future change in wire-reporting laws would enable plaintiff to identify such assets.

14

*Id.* at *16. In granting defendant's motion to dismiss for lack of jurisdiction, the court reasoned as follows:

> The caselaw, the authorities, and basic logic demonstrate that no *quasi in rem* jurisdiction under Rule B can exist without some *res* to be attached. In fact, for Rule B attachment to be appropriate, it is clear that the property must be located within the district and the property must belong to the defendant... If, as in this case, no property was attached in the first instance, then no jurisdiction was ever obtained under Supplemental Rule B.

*Id.* at *13-15. Further, the court rejected plaintiff's argument regarding the possibility of locating assets based on a change in the laws, recognizing that "to continue this action on the basis of Rule B attachment on the mere speculation that plaintiffs might be able to locate defendants' property sometime in [the next year] would be inappropriate." *Id.* at *16.

Similarly, in *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46 (S.D.N.Y. 2009), the court granted a defendant's motion to dismiss for lack of jurisdiction where no property belonging to the defendant was attached. The court explained that the presence of *res* within the District is essential in attaining jurisdiction over a Rule B defendant. *Id.* at 51. *See also Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 608 (S.D.N.Y. 1997)("Rule B attachment is not possible because no property of [defendants] has been located within the district.").

Here, even after having an opportunity to conduct discovery, Plaintiff has been unable to identify any attachable assets of Practica.[7] The prevailing case law set forth above mandates that the Order of attachment must be vacated and the action dismissed.

---

[7] Some courts have imposed a temporal limit as to when property must be attached under Rule B. *See Marco Polo Shipping Co. Pte. v. Supakit Prods. Co.*, 2009 U.S. Dist. LEXIS 19057, *2 (S.D.N.Y. 2009)(Sixty (60) days, and the court declined plaintiff's request that the action be maintained for an additional sixty (60) days where the plaintiff could not show defendant had assets in the district. "The fact that the defendant is still actively doing business and at some point in the past has conducted its business in United States dollars may mean that the defendant could transfer funds through a New York bank in the future, but it <u>hardly makes it plausible</u> that it actually will.")(*emphasis added*); *Thor Rederi A/S v. Revia-Redes Rodoviarias E Ferroviarias De Anfola De Angola, LDA*, 2009 U.S. Dist. LEXIS 33373, *1 (S.D.N.Y. Apr. 20, 2009)(Sixty (60) days); *Cosmotrade Exps. v. Conchart Overseas (Ofshore)*

Chalos & Co ref: 2094.040

### E. This Court does not have jurisdiction over Practica.

The jurisdiction conferred by a maritime attachment is *quasi in rem. Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572 F.3d 96, 108 (2d Cir. 2009). "[T]he quasi-in-rem characteristic of maritime attachment . . . requires the presence of some item of property of the defendant in the hands of the garnishee as a basis for jurisdiction over the defendant's interest in that property." *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46, 50 (S.D.N.Y. 2009). For the reasons set forth in detail above, the Plaintiff has made no showing (and cannot make any showing) that the Defendant Practica has any property within the District which may be attached pursuant to Rule B. As such, this Court cannot exercise *quasi in rem* jurisdiction over the Defendant.

Moreover, there is no other basis by which this Court can exercise jurisdiction over Practica. Both in its Complaint and the accompanying attorney affidavit, Hanjin asserted that "Practica is not found in the Southern District of New York" for purposes of Rule B. Docket #1, ¶ 17; *see also* Docket #5. The Second Circuit Court of Appeals has set forth a two-part test to determine whether a party is "found in the district" under Rule B: first, whether the defendant can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process. *Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. N.Y. 1963); *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 111 (2d Cir. N.Y. 2009). By Plaintiff's own admission, Practica is not subject to this Court's jurisdiction.

Accordingly, it is respectfully submitted that this Court does not have jurisdiction over Practica, and as such, this motion to dismiss this matter in its entirety must be granted.

---

*Sal*, 2009 U.S. Dist. LEXIS 87790, *5 (S.D.N.Y. Sept. 8, 2009)(Sixty (60) days). The Order of attachment here has been in effect for over five (5) months, well beyond the period generally allowed by courts in this District.

Chalos & Co ref: 2094.040

## CONCLUSION

WHEREFORE, based upon the foregoing, the accompanying Declaration, and Practica's prior submissions to this Court, it is respectfully requested that the Order of Attachment be vacated, and the action dismissed in its entirety. Defendant Practica further requests that the Court grant such other and further relief as it deems just and proper, including an award of its legal fees and expenses in bringing this motion.


Dated: Oyster Bay, New York
       December 20, 2013

                              Respectfully submitted,

                              **CHALOS & CO, P.C.**
                              *Attorneys for Defendant*
                              PRACTICA SHIPPING CORPORATION


                    By    _Katherine Christodoulatos_
                              George M. Chalos (GC 8693)
                              Katherine N. Christodoulatos (KC 1226)
                              55 Hamilton Avenue
                              Oyster Bay, New York 11771
                              Tel: (516) 714-4300
                              Fax: (516) 750-9051
                              E-mail: gmc@chaloslaw.com
                                      kchristodoulatos@chaloslaw.com

17