James H. Power
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd St.
New York, NY 10019
Telephone: (212) 513-3200
Telefax: (212) 385-9010
james.power@hklaw.com

ATTORNEYS FOR PLAINTIFF
HANJIN SHIPPING CO LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANJIN SHIPPING CO LTD.,

    Plaintiff,

-against-

PRACTICA SHIPPING CORPORATION a/k/a
PRACTICA SHIPPING CORP. LIMITED a/k/a
PRACTICA SHIPPING OF CYPRUS LLC.

    Defendant.

Civil Action No. 13-CV-4682 (KBF)

## MEMORANDUM OF LAW OPPOSING PRACTICA'S MOTION TO DISMISS

## Table of Contents

Page

PRELIMINARY STATEMENT ........................................................................................1
STATEMENT OF FACTS ................................................................................................3
ARGUMENT......................................................................................................................5
    1.    PLAINTIFF HAS MET ITS BURDEN OF DEMONSTRATING THAT ATTACHMENT IS PROPER ..............................................................................5
        A.    The Beneficial Interest of a Defendant at a Correspondent Bank Account is an Attachable Interest Under Maritime Law............................................5
        B.    Funds in a Correspondent Account Belong to a Foreign Bank's Customers .............8
    2.    DEFENDANT IS SUBJECT TO JURISDICTION IN THIS DISTRICT WHERE PROPERTY IS PRESENT, EVEN IF THE BANK HAS IMPROPERLY FAILED TO ATTACH THE PROPERTY ............................9
    3.    EVEN IF THE ATTACHMENT ORDER IS VACATED, PRACTICA MAY BE SUBJECT TO JURISDICTION BASED ON ITS TRADITIONAL JURISDICTIONAL CONTACTS........................................10
CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                   **Page(s)**

*Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.*,
(N.Y. Sup. Aug. 5, 2009) ......................................................................................... 2

*Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.*,
70 A.D.3d 456 (1st Dep't 2010) ..................................................................... passim

*Granite Enterprises Ltd. v. Virgoz Oils & Fats Pte Ltd.*,
No. 09-cv-4534, 2010 WL 532310 (S.D.N.Y. Feb. 11, 2010) ................................ 7

*Kingston Dry Dock Co. v. Lake Champlain Transportation Co.*,
31 F.2d 265 (2d Cir. 1929) ...................................................................................... 6

*Licci v. Lebanese Canadian Bank, SAL*,
-- F.3d --, 2013 WL 5663360 (2d Cir. Oct. 18, 2013) ......................................... 12

*Maryland Tuna Corporation v. Ms Benares*,
429 F.2d 307 (2d Cir. 1970) .................................................................................... 9

*Petrohawk Energy Corp. v. Law Debenture Trust Co.*,
No. 06 Civ. 9404, 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) .............................. 6

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd*,
585 F.3d 58 (2d Cir. 2009) .................................................................................. 7, 8

*Starboard Venture Shipping Inc. v. Casinomar Transportation Inc.*,
1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993) ........................................ 5

*STX PanOcean UK Co Ltd v. Glory Wealth Shipping Pte Ltd BVI*,
560 F.3d 127 (2d Cir. 2009) .................................................................................. 11

*Tarstar Shipping Co. v. Century Shipline Ltd.*,
451 F. Supp. 317 (S.D.N.Y. 1978) ......................................................................... 6

*Vamvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd.*,
No. 06 Civ. 1849, 2006 WL 1030227 (S.D.N.Y. Apr. 20, 2006) ........................... 6

*Vitol, S.A. v. Primerose Shipping Company Ltd*,
708 F.3d 527 (4th Cir. 2013) ........................................................................... 10, 11

*Winter Storm Shipping, Ltd. v. TPI*,
310 F.3d 263 (2d Cir. 2002) .................................................................................... 7

**STATUTES**

UCC Article 4 ................................................................................................................7

UCC Article 4A .............................................................................................................7

**OTHER AUTHORITIES**

31 C.F.R. §103 *et seq.* ...................................................................................................4

Supplemental Rule B for Admiralty or Maritime Claims ..................................... passim

Supplemental Rule E(2) for Admiralty or Maritime Claims .........................................10

Supplemental Rule E(4)(f) for Admiralty or Maritime Claims ......................................2

# PRELIMINARY STATEMENT

Plaintiff, Hanjin Shipping Co Ltd. (Seoul) ("Hanjin" or "Plaintiff") moved this Court for an order directing the issuance of process of attachment and garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime claims ("Rule B") against Defendant Practica Shipping Corporation ("Practica" or "Defendant") on July 8, 2013. Hanjin sought a writ of maritime attachment of Defendant's bank account funds, debts and credits maintained at U.S. Correspondent Banks located in New York. Plaintiff's Attachment was sought to obtain security for a $2,006,782.50 cargo damage claim pursuant to a Charterparty agreement. The principal legal issue is whether Practica maintains an attachable beneficial interest in the credits maintained at Credit Suisse AG in its correspondent account at Credit Suisse AG New York Branch, Bank of New York Mellon and Deustche Bank, up to the amount of its U.S. Dollar ("USD") account balances on deposit at Credit Suisse at the time the writs of attachment were served on July 9 and 10, 2013.

While the Second Circuit has made clear that under maritime law a beneficial interest is attachable, there is no Second Circuit precedent which precisely dictates the issue of whether a foreign USD account holder maintains an attachable beneficial interest in correspondent bank account credits under maritime law. However, New York's First Department has found that a foreign account holder's interest in correspondent account credits is sufficient to justify vacatur of an attachment of those credits with respect to a claim against the foreign bank (not the customers), because that attachment would interfere with the customers' rights and beneficial interests in those credits. *Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.*, 70 A.D.3d 456 (1st Dep't 2010).

*Cargill* affirmed that the beneficial interest of foreign U.S. Dollar account holders such as Defendant's in correspondent account credits is sufficient reason to vacate an attachment of those

1

credits with respect to a claim against the foreign bank. *A fortiori*, third parties such as Defendant maintain a legally recognizable beneficial interest in the credits housed in their foreign bank's correspondent account at New York correspondent banks. *Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.,* (N.Y. Sup. Aug. 5, 2009).

Practica claims that it is not subject to personal jurisdiction of this Court because no funds have been attached pursuant to the Attachment Order dated July 9, 2013. It is for this reason that Practica is aware of and concedes it has no standing to seek a vacatur of the Attachment under Supplemental Rule E(4)(f). D.E. 40 at 4. However, on the face of the pleadings there is a strong factual and legal basis to conclude that property for the benefit of Practica is located in New York and is properly subject to attachment by Credit Suisse AG. Further, bank discovery conducted confirms that Practica continues to use the Credit Suisse AG account to make U.S. Dollar transactions. Under the legal reasoning set forth by *Cargill*, those credits are located in New York, and are for Practica's benefit, and therefore should have been attached by Credit Suisse AG. Credit Suisse's failure to attach will make it liable as a garnishee for those amounts, which Plaintiff Hanjin seeks to prove at the conclusion of its discovery, which it is currently conducting.

If this Court does find that Plaintiff has failed to meet its burden that there is attachable property in the District located in the Credit Suisse account, Plaintiff requests that the Court simply vacate the Attachment Order, without dismissing the underlying Complaint against Practica, so that if at the close of discovery it is found that Credit Suisse AG should have attached the correspondent account funds, they may then be attached. Since Practica asserts that no funds have been attached, there is no prejudice in maintaining the action until such a determination is made.

At a minimum, Plaintiff submits that the record of this case is incomplete in the absence of the correspondent banking and financial services contracts between Credit Suisse AG and its correspondent banks as well as between Credit Suisse AG and its U.S. Dollar account customers such as Practica. Initial discovery was conducted against Credit Suisse AG pursuant to the Order permitting discovery dated September 19, 2013, and thus far production to be provided by Credit Suisse has not been forthcoming. A request has been made to this Court allow Hanjin to compel production by Credit Suisse AG. This discovery should be permitted to demonstrate that property in this District for the benefit of Practica either has been, or should have been attached by Credit Suisse pursuant to the Order of Attachment. Defendant Practica should not be permitted to prematurely file a Motion to Dismiss during the discovery period, while benefitting from the incompleteness of Bank production as the basis for its request before the discovery period is deemed by this Court to be completed.

For the foregoing reasons, and as further discussed below, this Court should deny Practica's Motion to Dismiss.

## STATEMENT OF FACTS

As set forth in the Verified Complaint, this Rule B attachment arises out of a dispute between non-party Marubeni Corporation ("Marubeni"), Hanjin ("Owners") and Practica ("Charterers") under a head charterparty and subcharter relating to the M/V HANJIN TACOMA (the "Vessel"). Compl. ¶ 5. Cargo claims were asserted by cargo interests and subsequently settled and thus form the basis of Hanjin's claims against Practica in the amount of $2,006,782.50. *Id.* ¶¶ 10-12.

Practica maintains at least one active U.S. dollar account at Credit Suisse AG which it used at the time of the Order of Attachment to maintain U.S. Dollars and U.S. Dollar credits. Credit Suisse AG has certified in accordance with U.S. law that it is a "foreign bank" within the

meaning of 31 C.F.R. §103 *et seq.* that maintains a U.S. dollar "correspondent account" as defined in 31 C.F.R. §103 *et seq.* on behalf of its customers. These accounts are subject to contracts between Credit Suisse and its U.S. correspondent banks. These contracts are the subject of the pending discovery by Hanjin in this action.

Credits housed in correspondent accounts within this District, such as the Credit Suisse AG correspondent account located at Bank of New York Mellon and/or at Credit Suisse AG, New York Branch, are maintained for the benefit of the foreign bank's U.S. Dollar customers and contain in substantial part the funds of its customers.

Credit Suisse AG, New York Branch was served with the Writ of Attachment on July 10, 2013. Credit Suisse AG filed a Report on July 29, 2013 and an Answer on August 16, 2013 stating that it does not have accounts in the name of or for the benefit of Practica. Credit Suisse AG did not indicate what, if any, actions it had taken to attempt to identify funds of the Defendant at the New York Branch, or why funds maintained in the correspondent accounts at the New York Branch are considered by Credit Suisse AG to belong to the Bank, rather than its customers.

This Court permitted discovery over Credit Suisse AG, Bank of New York Mellon and Deustche Bank on September 19, 2013 and authorized such discovery to continue at least through the next scheduled status conference of January 9, 2014. Plaintiff Hanjin served a subpoena *duces tecum* on Credit Suisse on October 4, 2013 requesting, among other things, copies of contracts Credit Suisse AG maintains establishing or governing its correspondent banking relationships with United States correspondent banks, and with its customer Practica Shipping Corporation. [D.E. 25]. On October 17, 2013, counsel for Credit Suisse responded to the subpoena by stating that it has no responsive documents to any request.

On October 18, 2013 Plaintiff served a subpoena *duces tecum* on Bank of New York Mellon. On November 13, 2013 Bank of New York Mellon produced a series of wire transactions referencing Practica which demonstrate Practica's continued use of the Credit Suisse AG account to conduct U.S. Dollar wire transfers. Bank of New York Mellon provided updated wire transfers on December 6, 2013 and December 20, 2013 showing Practica's continued transfers through December 2013, including to U.S. counterparties.

# ARGUMENT

## 1. PLAINTIFF HAS MET ITS BURDEN OF DEMONSTRATING THAT ATTACHMENT IS PROPER

Attachment is proper if the funds maintained in the New York correspondent accounts which have been attached pursuant to the Rule B order are in fact beneficially owned by the defendant. Beneficial ownership of property is an attachable interest under maritime law, and in New York, foreign customers of foreign banks which maintain correspondent accounts in New York located banks have been found to be the owners of the funds maintained there. These accounts by their very nature place the foreign bank in the role of mere paying agent on behalf of the bank's U.S. Dollar account holders.

### A. The Beneficial Interest of a Defendant at a Correspondent Bank Account is an Attachable Interest Under Maritime Law

The well-established maritime law governing attachable interest encompasses nearly all interests of a defendant in such property. *See, e.g., Starboard Venture Shipping Inc. v. Casinomar Transportation Inc.*, 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993) (Sotomayor, J.) at *7 (indicating that ownership for Rule B purposes includes "contingent" and

"conditional future interests" of a defendant and that "Rule B does not require that a defendant, in addition to ownership, have full control over its goods, chattels, credits or effects").

Judge Learned Hand held that a maritime defendant's future interest in property may be attached. In *Kingston Dry Dock Co. v. Lake Champlain Transportation Co.*, 31 F.2d 265 (2d Cir. 1929), the plaintiff attached canal boats that were still owned by another because a pending sale was not final. It was undisputed that the defendant had no "title" to the attached vessels. Nevertheless, the Second Circuit held that the attachment of the vessels as defendant's property was valid. *Id.* at 266-67; *see also Vamvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd.*, No. 06 Civ. 1849, 2006 WL 1030227, at *2-3 (S.D.N.Y. Apr. 20, 2006) (upholding attachment of prepayment of executory contract, even where third-party contractor subsequently cancelled its contract, because the defendant had a property interest in the attached funds that was more than a "mere expectancy").

Similarly, admiralty courts have regularly recognized that a maritime defendant's **beneficial** property interest in moneys being received or paid by a paying and/or receiving agent is attachable, even though the defendant has no "title" to the funds, but merely a future expectancy interest. *See, e.g., Petrohawk Energy Corp. v. Law Debenture Trust Co.*, No. 06 Civ. 9404, 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) (explaining the meaning of "paying agent" in a commercial context); *Tarstar Shipping Co. v. Century Shipline Ltd.*, 451 F. Supp. 317, 324 (S.D.N.Y. 1978) (explaining concept of "paying agent" in the maritime industry, where it is common for owners and/or charterers to utilize agents for the receipt and/or payment of freight, hire or other assets). Paying agents transfer sums from, or receive assets in, accounts in their name, but the beneficial interest in these moneys lies with the principal on whose behalf the funds are either being paid or received. This beneficial property interest is attachable under

maritime law. This is the very nature and purpose of the various correspondent accounts maintained by Credit Suisse AG with the New York correspondent bank - here, its own New York branch.

This is not an electronic fund transfer ("EFT") case, and as such the Second Circuit decision of *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd*, 585 F.3d 58 (2d Cir. 2009) and its progeny do not control here. "...*Jaldhi* dealt only with the restraint of EFTs passing through intermediary banks." *Granite Enterprises Ltd. v. Virgoz Oils & Fats Pte Ltd.*, No. 09-cv-4534, 2010 WL 532310, *1 (S.D.N.Y. Feb. 11, 2010).

In *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002), the Second Circuit found in favor of allowing for the attachment of wire transfers under maritime law. The Second Circuit carefully examined UCC 4A's wire transfer prohibition and the historical outcome of conflicts between state law and maritime law in terms of attachment, which were generally resolved in favor of maritime law. *Winter Storm*, 310 F.3d at 279-80. On this basis, the Second Circuit concluded that UCC 4A's wire transfer prohibition did not apply in maritime cases.

Between 2002 and 2009, wire transfers being processed by intermediary banks were attachable under maritime law. In 2009, the Second Circuit reversed itself in *Jaldhi*, and held that pursuant to UCC 4A's wire transfer prohibition, adopted as law in New York State, wire transfers would no longer be attachable while being processed in intermediary banks pursuant to Rule B.

Bank accounts, including but not limited to correspondent accounts, are governed by UCC Article 4 ("UCC 4"), **_not_** UCC Article 4A. Unlike UCC 4A, which contains an express prohibition on the attachment of a defendant's beneficial interest in wire transfers being processed by an intermediary bank, UCC 4 contains no analogous prohibition on the attachment

7

of a defendant's beneficial interest in the USD credits maintained by the foreign bank in New York located correspondent bank accounts. For this reason, Practica has not been able to point to any case or statute that stands for the proposition that the proposed attachment is not permissible. Unlike *Jaldhi*, this is not a case where the broad scope of federal maritime attachments is in conflict with state statute because there is no New York state statute on point.

### B. Funds in a Correspondent Account Belong to a Foreign Bank's Customers

Under New York law it is clear that the correspondent accounts maintained by foreign banks are located in New York, and are comprised at least in part of funds held for the benefit of the foreign bank's customers. In 2010, the First Department of the New York Supreme Court Appellate Division decided the case of *Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.*, 70 A.D.3d 456 (1st Dep't 2010). In *Cargill*, a lender sought and obtained an order of attachment against all of the correspondent account(s) maintained by debtor OJSC Bank Finance and Credit ("Ukrainian Bank"). Like Credit Suisse, the Ukrainian Bank maintained correspondent accounts in its name with various correspondent banks in New York.

The First Department upheld the New York Supreme Court's decision to vacate the attachment because it agreed with the trial court that most of the attached funds in the correspondent accounts were actually being held for the benefit of the Ukrainian Bank's customers, and were found to mostly contain the funds of the Ukrainian Bank's clients. At the trial level, after an evidentiary hearing wherein one or more of the correspondent banks involved in the matter here argued that the Ukrainian Bank's customers did not have a beneficial interest in the funds attached, Judge Ramos made a finding based on a significant amount of discovery that "the bank accounts are correspondent accounts maintained by a foreign bank (the

defendant) for the benefit of its clients as well as for its own benefit. The bulk, if not all, of the funds restrained were the funds of the defendant's customers." *Id.*

2. **DEFENDANT IS SUBJECT TO JURISDICTION IN THIS DISTRICT WHERE PROPERTY IS PRESENT, EVEN IF THE BANK HAS IMPROPERLY FAILED TO ATTACH THE PROPERTY**

As stated above, the present Motion to Dismiss is premature because even where a garnishee has failed to properly identify funds belonging to the Defendant, the inquiry is not complete. According to the Second Circuit, in a Rule B action where a garnishee has "served an answer denying that it held any property of or owed any debts to [Defendant]... These denials should not have been taken at face value. These denials and other similar assertions in various affidavits should be treated as at most raising issues to be determined in due court in adversary proceedings on the merits..." *Maryland Tuna Corporation v. Ms Benares*, 429 F.2d 307, 322 (2d Cir. 1970).

Credit Suisse AG's Answers to the Order and Writ of Attachment are not dispositive on the issue of whether there is property of Practica located in the District. Additionally, Credit Suisse AG has put forth responses to Plaintiff's subpoena *duces tecum* which have failed to adequately respond to requests - in fact, the assertion that there are no contracts governing Credit Suisse AG's relationships with its New York located correspondent banks or U.S. Dollar customers is simply impossible. It is impossible that these Banks do business with each other on an international scale without contracts governing those significant business relationships. In fact, counsel for Plaintiff has seen examples of such contracts between banks in other actions, and also heard representations from the correspondent banks in this case that such contracts exist. Finally, because wire transfers obtained from Bank of New York Mellon clearly show that

Practica continues to make transfers out of its Credit Suisse account, the New York Branch which has accepted service on behalf of Credit Suisse AG must be made to provide sufficient answers to this Court.

After several unanswered attempts to follow up with Credit Suisse AG, a letter to this Court was filed January 7, 2014 requesting that the Court compel Credit Suisse AG to produce the information sought so that Hanjin may demonstrate the nature of Practica's interest in the Credit Suisse correspondent account funds [D.E. 45]. Once the discovery is completed, the Court should make a legal determination on the merits whether property for the benefit of Practica is attachable under Rule B. Based solely on the pleadings, dismissal for lack of personal jurisdiction would be unwarranted at this time, and discovery conducted to date supports Hanjin's assertions that Practica uses Credit Suisse AG, and by necessity, its correspondent account to make U.S. Dollar transfers.

3. **EVEN IF THE ATTACHMENT ORDER IS VACATED, PRACTICA MAY BE SUBJECT TO JURISDICTION BASED ON ITS TRADITIONAL JURISDICTIONAL CONTACTS**

If this Court vacates the Order of Attachment on the grounds that property has not been attached at Credit Suisse AG in New York, the underlying action should not be dismissed for lack of personal jurisdiction over Defendant Practica. As an initial matter, "dismissal does not automatically flow from vacatur of Supplemental Rule B attachment." *Vitol, S.A.*, 708 F.3d at 541. Any reference by Practica to a pleading standard under Supplemental Rule E(2) is inapplicable here, as the goal of Rule E is to prevent the unjust attachment of property for a substantial period of time, and Practica itself claims that no property has been attached. See D.E. 40 at 7; see also *Vitol, S.A. v. Primerose Shipping Company Ltd*, 708 F.3d 527, 539 (4th Cir.

2013) ("the primary remedy afforded for failure to comply with Rule E(2)(a) is vacatur of the attachment. Dismissal of the complaint is not a Rule E remedy.")

Practica itself points out that at the pre-discovery stage, Plaintiff need only make a prima facie showing that personal jurisdiction exists. D.E. 40 at 7. Although the burden is heightened "once jurisdictional discovery is conducted" (*Id.*), in this case jurisdictional discovery is ongoing and therefore the heightened standard should not be applied. At this stage in the litigation, Hanjin has demonstrated that there is basis for a prima facie showing that Practica is subject to jurisdiction, either through the presence of its property in the District located at Credit Suisse's correspondent accounts, and/or through traditional jurisdictional contacts.

That this Court maintains personal jurisdiction over Practica is not incompatible with the Rule B Order of Attachment issued over the funds contained in Credit Suisse AG's correspondent accounts. Attachment of Practica's property was and is proper under Rule B because Practica cannot be "found" within the District. Being "found" entails two factors: Rule B attachment is inappropriate if defendant is within the District in a jurisdictional sense, ***and*** if the defendant is amenable to service of process within the district. *STX PanOcean UK Co Ltd v. Glory Wealth Shipping Pte Ltd BVI*, 560 F.3d 127, 130-31 (2d Cir. 2009) (citing *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. 1963) and *Integrated Container Serv. Inc. v. Starlines Container Shipping Ltd.*, 476 F.Supp. 119, 122 (S.D.N.Y. 1979)). "[S]ufficient contacts to establish in personam jurisdiction in the *International Shoe* sense, absent a showing of actual presence that would allow a plaintiff to locate the defendant in the district for service of process, will not support a conclusion that a defendant is found within that district." *Id.* It was on this basis that Hanjin sought attachment over property held for the benefit of Practica in the correspondent accounts of Credit Suisse located in New York.

Although it appears that Practica may in fact be located in the District in a jurisdictional sense, as gleaned from newly obtained evidence, because Practica is not subject to service of process in this District, the Plaintiff properly represented to the Court that Practica could not be "found" within the meaning of Rule B, and therefore the Order of Attachment was proper.

Since the discovery Order issued by this Court on September 19, 2013, Plaintiff Hanjin has obtained significant evidence, particularly from BNY Mellon that Practica conducts business in the United States, including a large amount to and from bank accounts located in New York. Since 2012, the BNY Mellon wire transfers produced show almost $3 million worth of transactions made which have ties to New York or the United States. This production is subject to a Confidentiality Agreement signed by Hanjin and the Bank of New York Mellon, but could be produced at a later date after obtaining the requisite waivers.

Additionally, even if the Court finds that the funds maintained at Credit Suisse's account on behalf of Practica are not attachable, they may also form the basis of jurisdiction as traditional contacts. In the recently decided case *Licci v. Lebanese Canadian Bank, SAL*, -- F.3d --, 2013 WL 5663360 (2d Cir. Oct. 18, 2013) the Second Circuit confirmed after certifying the question to the New York Court of Appeals that "the use of a New York correspondent bank account, standing alone, may be considered a 'transaction of business' under the long-arm statute if the defendant's use of the correspondent account was purposeful." *Id.* at *4. Like in *Licci*, Practica knowingly and purposefully utilized the correspondent account located in New York to transact business in U.S. Dollars and together with its other New York contacts, these transactions form the basis for jurisdiction here.

## CONCLUSION

Defendant Practica maintains a U.S. Dollar bank account at Credit Suisse AG, who in turn maintains correspondent bank accounts at various New York located banks where the beneficial interest in those credits is maintained. The U.S. Dollar credits are never moved from New York, but instead transferred to counterparties' U.S Dollar accounts similarly maintained in New York, at the instruction of the foreign customer. Defendant has an obvious beneficial interest in the funds maintained at Credit Suisse up to the amount of funds on deposit at the foreign bank, regardless of whether title is held by the foreign bank, as New York's First Department recently recognized in *Cargill*.

If the defendant does have an interest in the funds in the correspondent account, Credit Suisse is liable up to the amounts on deposit by Practica on the date of the Attachment Order. Because discovery with respect to this issue is ongoing, this action should not be dismissed. At a minimum, this Court should compel Credit Suisse AG to properly answer Hanjin's discovery request and allow Hanjin to finish its pending discovery on the issues of attachable interest of the correspondent bank accounts and to obtain the proper correspondent banking agreements as requested.

Finally, the Court should deny Practica's motion to dismiss because Practica is subject to this Court's jurisdiction as evidenced by the bank discovery obtained from Bank of New York Mellon, which may be further supported by discovery which is ongoing against Credit Suisse. The current motion is therefore premature, as discovery was permitted by this Court precisely in order for Plaintiff Hanjin to present its case against Practica, including the jurisdictional element.

Dated: New York, New York
January 7, 2014

                        HOLLAND & KNIGHT LLP

                        By: _/s/ Marie E. Larsen_
                            James H. Power
                            Marie E. Larsen
                            HOLLAND & KNIGHT LLP
                            31 West 52nd Street
                            New York, New York 10019
                            Telephone: (212) 513-3200
                            Fax: (212) 385-9010
                            Email: james.power@hklaw.com
                                          marie.larsen@hklaw.com